IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

ALISON C. HALLAND,

    Plaintiff,

v.

ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, a Colorado corporation,

    Defendant.

## COMPLAINT

Plaintiff Alison C. Halland ("Halland"), by and through undersigned counsel, Hailey | Hart PLLC, for her Complaint against Defendant Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield ("BCBS"), states and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

2. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(1) and 1132(f).

3. At all relevant times, Halland was a named insured under the BCBS Anthem Gold PPO 2500/0%/2500 w/HSA health insurance plan (the "Plan"). At all times relevant, Halland resided and continues to reside in the State of Colorado.

4. BCBS is a Colorado corporation that conducts business in the State of Colorado. BCBS issued the Plan to Halland and denied benefits owed to Halland under the terms of the Plan.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) and 29 U.S.C. § 1132(e)(2). The parties reside in this judicial district. BCBS issued the Plan to Halland in this judicial district. BCBS's wrongful conduct occurred in this judicial district.

## FACTUAL ALLEGATIONS

6. At all times relevant, the Plan provided health insurance benefits for medically necessary covered services.

7. The Plan is an "employee benefit plan" as defined by 29 U.S.C. § 1002(3).

8. Halland is a "participant" of the Plan as defined by 29 U.S.C. § 1002(7).

9. BCBS sponsors and administers the Plan.

10. BCBS is a Plan "fiduciary" as defined by 29 U.S.C. § 1002(21)(A)(iii).

11. The Plan purports to grant BCBS "complete" discretionary authority to administer Halland's benefits and make medical necessity determinations regarding Halland's care.

12. BCBS owes Halland a duty to provide a full, fair, and accurate review of claims.

13. BCBS owes Halland a duty to discharge its duties, including making medical necessity determinations and paying claims, solely in Halland's interest.

14. On August 17, 2020, Halland sustained personal injuries while on vacation in Detroit Lakes, Minnesota. Halland was skiing behind a boat when she fell in the water and suffered a traumatic dislocation and avulsion injury to her right femur and hip ("the Injury").

15. Immediately following the Injury, Halland was rushed to the local Emergency Department ("LED"). There, the hip dislocation was reduced under conscious sedation.

Additional damage to the hip occurred upon replacement of the joint, and the post-reduction CT scan showed an incarcerated fragment within the joint.

16. Halland required post-reduction emergent care to adequately address the Injury. The LED was not equipped to deliver the level of care Halland required.

17. On August 17, 2020, Halland was transferred by ambulance from the LED to Fairview Southdale Hospital in Edina, Minnesota ("the Hospital"). Halland arrived at the Hospital around 12:15 a.m. on August 18, 2020. Halland was admitted to the Hospital for definitive management, arthroscopic removal of the incarcerated fragment, and possible labral repair.

18. Upon admission to the Hospital, Halland was in severe pain and experiencing inflammation. Halland could not ingest the full, recommended amount of prescription pain medications because she was at that time breastfeeding her nine-month-old son.

19. Upon admission to the Hospital, orthopedic surgeon, Jason S. Holm, M.D. ("Holm"), examined Halland. Holm determined additional surgery was immediately necessary to address Halland's severe pain and avoid avascular necrosis of the femoral head.

20. On August 18, 2020, Holm removed the incarcerated bony fragment from Halland's right hip and repaired the posterior labrum ("the Surgery").

21. Following the Surgery, Halland:

 a. continued to experience severe pain;

 b. had a fever; and

 c. was unable to perform the activities of normal daily living unassisted.

22. On the advice of medical personnel, Halland was admitted to the regular surgical floor of the Hospital following the Surgery.

23. On August 19, 2020, Halland was discharged from the Hospital. Halland returned home to Colorado that same day.

24. Following the Surgery, the Hospital submitted to BCBS for payment a $38,080.88 bill for the treatment of Halland on August 18 and 19, 2020 ("the Bill"). The Bill includes:

| | |
|---|---|
| Operating Room Services | $9,077.00 |
| Surgical Supplies and Devices | $16,418.06 |
| General Anesthesia | $2,134.00 |
| Laboratory | $247.00 |
| Pharmacy | $2,606.82 |
| Recovery Room | $2,483.00 |
| Physical Therapy | $683.00 |
| Occupational Therapy | $526.00 |
| Room and Board | $3,906.00 |
| **TOTAL:** | **$38,080.88** |

25. On August 21, 2020, BCBS denied coverage for all services reflected in the Bill. BCBS's explanation of benefits ("EOB") erroneously states the Hospital billed $38,080.88 for room and board. BCBS's EOB erroneously states room and board was not medically necessary.

26. On November 2, 2020, Fairview Health Services submitted an Appeal Request Form to BCBS. That Appeal Request Form was accompanied by more than 300 pages of medical records generated by the Hospital relating to the Injury and the Surgery. Those records reflect the services shown in the Bill. Those records show that following the Surgery, Halland:

    a.    was in pain;

    b.    ran a fever; and

    c.    required ambulatory assistance.

27. On December 2, 2020, BCBS wrote a letter to Halland again advising it was denying payment for the cost of her inpatient stay at the Hospital. There, BCBS stated:

> [Y]our doctor wants a full admission after your hip injury (hip arthroscopy and repair). The plan clinical criteria considers a full hospital admission medically necessary if there are severe problems during or after surgery. These might include pain, bleeding, infection, or fever. The information we have does not show you have these or other sever problems. For this reason, the request for full admission is denied as not medically necessary.

28. On December 22, 2020, Holm's practice, Twin Cities Orthopedics, submitted an Appeal Request Form to BCBS. That Appeal Request Form was accompanied by more medical records and notes, submitted to support a medical necessity determination. That Appeal Request Form highlights the fact that the Bill includes charges for the Surgery, separate and distinct from any room and board or inpatient overnight stay. That Appeal Requests asks BCBS to please reprocess the claim.

29. On February 16, 2021, Holm submitted to BCBS a letter authored by him on January 4, 2021. The purpose of that letter was to set forth the medical necessity of the services provided by the Hospital as reflected on the Bill. Holm therein told BCBS:

> I treated Alison Halland for an injury that she sustained to her right hip on 8/17/2020. She was seen initially after a hip dislocation related to a waterskiing injury at an outside emergency department. She underwent a reduction and was noted to have persistent subluxation of the joint with incarcerated fragment within the joint. Given the acute injury with a nonconcentric hip reduction and a known incarcerated fragment with risk for further trauma to the cartilage, she was transferred acutely to Southdale hospital and early the following morning underwent a hip arthroscopy with removal of the incarcerated fragment fracture fixation and labral repair.
>
> The patient was postoperatively admitted to the regular surgical floor for a variety of reasons as opposed to immediate discharge after the procedure. In part, she was admitted for pain control, given the acute fracture leading to increase[d] pain relative to a standard hip arthroscopy. She also required a time to work with therapy to demonstrate appropriate mobility having not [] previously spent time on crutches. She was also in town on vacation from Denver and was initially seen in an emergency department several hours from Southdale where she was ultimately admitted. She has no family in the area or other places to be discharged to. It was not felt that this would ultimately be a safe decision for her until a more definitive discharge plan was in place as her plan was to return to Colorado as soon as possible. She did well in the hospital and was discharged the next day. For these reasons, I feel it is appropriate that Alison was admitted overnight after her hip arthroscopy.

5

> It would not have been medically reasonable or safe for her to discharge on the same day of her surgery.

30. On June 17, 2021, BCBS again wrote to Halland. There, BCBS reaffirmed its denial of coverage for any services performed at the Hospital. There, BCBS reaffirmed its refusal to pay any portion of the Bill. There, BCBS again stated:

> [Y]our doctor wants a full admission after your hip injury (hip arthroscopy and repair). The plan clinical criteria considers a full hospital admission medically necessary if there are severe problems during or after surgery. These might include pain, bleeding, infection, or fever. The information we have does not show you have these or other sever problems. For this reason, the request for full admission is denied as not medically necessary.

31. After BCBS denied the appeals of Fairview Health Services and Twin Cities Orthopedics, Halland received a bill for $34,174.88 for all services performed at the Hospital. The balance billed to Halland was $3,906.00 less than the amount initially claimed with BCBS. The $3,906.00 credit on the itemized bill Halland received shows as a "Blue Cross Adjustment."

32. Halland is legally responsible for the full balance of the $34,174.88 billed to her by the Hospital. Halland has not paid any portion of that balance to date. Halland is not in a financial position to satisfy this debt.

33. On or about August 11, 2021, Halland sent a three-page letter to BCBS requesting a voluntary second level appeal of the coverage decision. There, Halland stated:

    a.    the Bill reflects just $3,906.00 in room and board charges;

    b.    BCBS has given no explanation as to why the remainder of the Bill is not covered under the Plan;

    c.    BCBS is wrong in its conclusion that the overnight stay at the Hospital was not medically necessary; and

6

     d. the overnight stay at the Hospital was medically necessary because Halland was in severe pain, running a low-grade fever, and unable to perform her activities of daily living following the Surgery.

  34. On September 1, 2021, BCBS denied Halland's appeal.  There, BCBS stated:

[Y]our doctor wanted a full admission after your hip surgery.  Your care could have been done without a full hospital admission.  This could have included an overnight stay to watch for and manage problems that could have happened after surgery.  The plan clinical criteria considers a full hospital admission medically necessary if there are severe problems during or after surgery.  These might include significant bleeding, infection, or fever.  The information we have does not show you have these or other severe problems.  For this reason, the request for full hospital admission is denied as not medically necessary.

\*  \*  \*

This is our final decision.  Your appeal rights are exhausted.

  35. To date, BCBS continues to deny coverage for the care Halland received at the Hospital.

  36. To date, BCBS continues to refuse to pay any of the charges reflected on the Bill.

  37. The information made available to BCBS when evaluating the claim for benefits shows that Halland experienced post-surgery pain, fever, and ambulatory difficulties.

  38. BCBS ignored available relevant information supporting Halland's claim.

  39. BCBS never explained to Halland why the room and board charges on the Bill were not paid considering her post-surgery symptoms and problems.

  40. BCBS never explained to Halland why the non-room and board charges on the Bill were not paid and/or are not covered by the Plan.

  41. BCBS's denial of benefits is unreasonable.

42. Because it both insured and administered the Plan, BCBS was operating at all relevant times under an inherent dual role conflict of interest.

43. In denying coverage for the medical services provided by the Hospital as reflected on the Bill, BCBS placed its own interests ahead of Halland's interests.

44. BCBS's conduct in denying coverage for the treatment Halland received at the Hospital lacks the neutrality and objectiveness of a fiduciary.

45. BCBS's denial of coverage for Halland's treatment at the Hospital is not entitled to deference.

46. BCBS's refusal to pay the charges shown on the Bill is not entitled to deference.

47. Halland has fulfilled her duties under the Plan and is entitled to receive benefits under the Plan.

48. Halland has exhausted all mandatory appeals and therefore has a right to bring a civil action under 29 U.S.C. § 1132(a)(1)(B).

49. Pursuant to C.R.S. §§ 10-3-1116(2) and (3), BCBS's denial of coverage and refusal to pay benefits is subject to *de novo* review.

### CLAIM FOR RELIEF
(Against BCBS for Benefits Due Under the Plan)

50. Halland incorporates by reference the allegations contained in all preceding paragraphs with specificity as if set forth herein.

51. Halland brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B), which grants her the right to file a civil action against BCBS to recover benefits due under the Plan.

52. The Plan is a contract of insurance.

53. Halland is a participant in and beneficiary of the Plan.

8

54. Halland paid all premiums owed to BCBS for the benefits offered by the Plan and/or otherwise satisfied all conditions precedent to receiving benefits under the Plan.

55. Halland and her health care providers established that Halland was entitled to benefits under the terms of the Plan for the care Halland received at the Hospital.

56. BCBS owes Halland a duty to provide a full, fair, and accurate review of claims.

57. BCBS owes Halland a duty to discharge its duties, including its duty to make medical necessity determinations and pay covered claims, solely in Halland's interest.

58. The care Halland received at the Hospital was medically necessary.

59. The charges on the Bill are for medically necessary covered services.

60. BCBS ignored and/or unreasonably disregarded information supporting Halland's entitlement to benefits under the Plan.

61. BCBS breached the terms of the Plan by denying coverage for the treatment Halland received at the Hospital.

62. BCBS breached the terms of the Plan by refusing to pay the charges shown on the Bill.

63. BCBS breached its fiduciary duties to Halland when it failed to provide a full, fair, and accurate review of her claim for benefits.

64. BCBS breached its fiduciary duties to Halland when it placed its interests over hers.

65. As a direct and proximate result of BCBS' breach of its duties under the Plan and/or breach of fiduciary duties to Halland, Halland was denied benefits owed under the Plan.

66. As a direct and proximate result of BCBS' breach of its duties under the Plan and/or breach of fiduciary duties to Halland, Halland sustained economic damages.

67. Halland brings this action to recover benefits (with interest) owed to her under the Plan.

68. Pursuant to 29 U.S.C. § 1132(g), Halland is furthermore entitled to an award of prejudgment interest, reasonable attorneys' fees, and costs incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alison C. Halland respectfully requests this Court enter Judgment in her favor against BCBS and issue an Order declaring she is entitled to an award of economic damages, inclusive of the following:

(A) the total amount of the Bill;

(B) attorneys' fees and costs as authorized by 29 U.S.C. § 1132(g);

(C) prejudgment and post-judgment interest incurred to date of payment; and

(D) any other such relief as this Court deems just and proper.

Respectfully submitted this 18th day of May, 2022

        HAILEY | HART PLLC

By: *s/ Melissa A. Hailey*
     *s/ Elizabeth A. Hart*
Melissa A. Hailey, #42836
Elizabeth A. Hart, #46041
Hailey | Hart PLLC
383 Corona Street, Suite 319
Denver, CO 80218
720-400-7970
melissa@haileyhartlaw.com
liz@haileyhartlaw.com

10